UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER ZAYAS, JR., individually and as the Administrator of the Estate of Ismael Zayas, Deceased,

Plaintiff,

-against-

U.S. BANK, N.A.; KASS SHULER, P.A.; RICHARD MCIVER, ESQ.; and JENNIFER SCOTT, ESQ.,

Defendants.

Case No. 1:25-cv-10709 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Alexander Zayas, Jr. ("Zayas" or "Plaintiff") brings this action, individually and as administrator of his grandfather Ismael Zayas's New York estate (the "Estate"), against Defendants U.S. Bank, N.A. ("U.S. Bank"), Kass Shuler, P.A., Richard McIver, and Jennifer Scott (collectively, "Kass Shuler," and together with U.S. Bank, "Defendants"), alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, tortious interference with contract, and abuse of process. Dkt. 11 ("Am. Compl." or the "Amended Complaint") ¶¶ 47-73. Plaintiff alleges that Defendants "conspired to fraudulently and willfully deprive the Estate of its money by asserting a baseless and frivolous insurance claim to . . . the Estate's home insurer." *Id.* ¶ 7. Now before the Court are Kass Shuler's and U.S. Bank's motions to dismiss the First Amended Complaint. *See* Dkt. 17 ("Kass Mot."); Dkt. 28 ("Bank Mot."). For the reasons that follow, the Court GRANTS both motions.

## BACKGROUND

### I. Factual Background

The following facts are drawn from the Amended Complaint and taken as true for purposes of this motion. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). The Court also takes judicial notice of the underlying Florida state-court proceedings referenced throughout the Amended Complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (noting that, in evaluating a motion to dismiss, courts look to the "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken" (omissions adopted) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation omitted)); *accord Curtis v. 360 Bus. Mgmt., Inc.*, No. 25-cv-03415 (KMK), 2025 WL 3158702, at *6 n.6 (S.D.N.Y. Nov. 12, 2025).

#### A. The Property, Mortgage, and Insurance Claim

In 2007, Ismael Zayas purchased residential property at 230 Leafy Way Avenue in Spring Hill, Florida (the "Property") and financed the purchase with a mortgage issued by Taylor, Bean & Whitaker. Am. Compl. ¶¶ 2, 13. After Ismael Zayas's son discovered suspected sinkhole activity at the Property in 2009, Ismael Zayas submitted a homeowners' insurance claim to Citizens Property Insurance Corporation ("Citizens"). *Id.* ¶¶ 7, 17. Citizens ultimately approved the claim and issued a check for $33,303.73 in November 2013. *Id.* ¶ 19. The check was made payable jointly to Ismael Zayas, his counsel, and Ocwen Loan Servicing ("Ocwen"), an entity associated with an earlier foreclosure action concerning the Property. *See id.* ¶¶ 14, 16, 18-19.

Plaintiff's counsel returned that check to Citizens, noting that Ocwen's inclusion on the check was inappropriate because the earlier foreclosure action had been dismissed after Ocwen failed to establish standing. *See id.* ¶¶ 18-19. Ismael Zayas subsequently passed away on July 24, 2014, and Plaintiff was appointed administrator of his estate. *Id.* ¶¶ 8, 20.

**B. The Florida Foreclosure and Post-Judgment Proceedings**

In 2017, U.S. Bank commenced a new foreclosure action concerning the Property in the Circuit Civil Court of the Fifth Judicial Circuit in and for Hernando County, Florida (the "Foreclosure Action"). *See id.* ¶¶ 9, 22; Dkt. 26-1. Kass Shuler represented U.S. Bank in that action. Am. Compl. ¶ 10. The Florida trial court entered summary judgment for U.S. Bank, and the judgment was affirmed on appeal. *Id.* ¶¶ 27-28. A foreclosure sale followed. *Id.* ¶ 28. Plaintiff alleges that the sale fully satisfied the foreclosure judgment and that U.S. Bank sold the Property without any deficiency. *Id.* ¶¶ 4, 29, 54.

After the foreclosure proceedings, the Estate again sought payment of the sinkhole insurance proceeds. *Id.* ¶ 30. Citizens advised that any reissued check would be payable to the Estate, the Estate's counsel, and U.S. Bank, meaning that the Estate could only receive the funds if U.S. Bank co-endorsed the check. *Id.* Plaintiff alleges that when he reached out to U.S. Bank to request its co-endorsement, Defendant Jennifer Scott, acting as U.S. Bank's legal representative, stated that U.S. Bank, rather than the Estate, was entitled to the insurance proceeds. *Id.* ¶¶ 6, 31. She did not, however, identify the legal basis for that claim at the time. *Id.* ¶¶ 6, 32. Thereafter, the Estate moved in the Foreclosure Action to compel U.S. Bank to endorse the check. *Id.* ¶ 33. U.S. Bank, through Kass Shuler, opposed the motion on the ground that the court lacked jurisdiction over the post-judgment dispute. *Id.* The trial court rejected that argument and directed U.S. Bank to endorse the check. *Id.* ¶ 34. U.S. Bank appealed. *Id.* ¶ 35.

On August 1, 2025, Florida's Fifth District Court of Appeal agreed that the trial court lacked jurisdiction to enter the post-judgment order and quashed it. *Id.* ¶ 38; Dkt. 18-5 at 2.

During the pendency of the appeal, Citizens mailed a replacement check to Kass Shuler's Florida office. Am. Compl. ¶ 39. Plaintiff alleges, largely on information and belief, that Defendants engaged in improper communications with Citizens and retained the check after the appellate ruling. *Id.* ¶¶ 43-44. It was only after Plaintiff threatened to initiate this action that U.S. Bank relinquished any claim to the proceeds and the Estate was able to, and did in fact, receive the proceeds. *Id.* ¶¶ 45-46.[1]

Beyond this central dispute, the Amended Complaint also alleges that a mortgage servicer acting for U.S. Bank issued a Form 1099-C in March 2025 that reported cancellation of approximately $129,572.23 in debt. *Id.* ¶¶ 57-58, 83-85. Plaintiff alleges that the reporting was false because the foreclosure judgment had been satisfied. *Id.* ¶¶ 57, 84-85. Those allegations are invoked alongside Plaintiff's request for punitive damages. *Id.* at 15. The three causes of action themselves focus primarily on Defendants' asserted claim to the insurance proceeds and their conduct in the post-judgment proceedings. *Id.* ¶¶ 47-91; *but see id.* ¶¶ 57-58 (discussing allegedly false reporting within FDCPA claim description).

## II. Procedural History

Plaintiff commenced this action in New York state court on November 23, 2025. *See* Dkt. 1-1 ("Compl."). On December 26, 2025, U.S. Bank, on consent from Kass Shuler, removed the case to this Court on federal question and diversity grounds. *See* Dkt. 1 ¶¶ 12, 13, 22; Dkt. 4. Plaintiff filed the Amended Complaint on February 2, 2026. *See* Am. Compl.

---

[1] Though the check that Citizens first issued in November 2013 was for $33,303.73, Am. Compl. ¶ 19, this later-issued check was for $33,303.79, *id.* ¶ 46. It is not immediately apparent whether this discrepancy is owing to an error by Plaintiff in drafting the Amended Complaint or Citizens in issuing the check, but the discrepancy is inconsequential in any event.

On February 16, 2026, Kass Shuler moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim on which relief can be granted. Kass Mot.; Dkt. 19 ("Kass Br."); Dkt. 18 ("Yannucci Decl."); Dkts. 18-1–18-5. Plaintiff filed his opposition brief on March 26, 2026, Dkt. 25 ("Opp. to Kass"); Dkt. 24 ("Dalley Decl."), and Kass Shuler replied on April 17, 2026, Dkt. 27 ("Kass Reply"); Dkt. 26 ("Yannucci Reply Decl."); Dkt. 26-1.

Later, on April 22, 2026, U.S. Bank also moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). Bank Mot.; Dkt. 28-2 ("Bank Br."); Dkt. 28-3 ("Kofman Decl."); Dkts. 28-4–28-8. Plaintiff opposed this motion on May 29, 2026, Dkt. 38 ("Opp. to Bank"); Dkt. 37 ("Dalley Decl."), and U.S. Bank filed its reply on June 11, 2026, Dkt. 45 ("Bank Reply"). Both motions are fully briefed.

## LEGAL STANDARDS

### I. Rule 12(b)(2)

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Edwardo v. Roman Cath. Bishop*, 66 F.4th 69, 73 (2d Cir. 2023) (quoting *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167-68 (2d Cir. 2015)); *see also Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010))). The manner of this showing "varies depending on the procedural posture of the litigation." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball*, 902 F.2d at 197). The

court "accept[s] as true all factual claims in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam)); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (applying same rule to jurisdictional allegations included in affidavits). But where a "conclusory allegation . . . is contradicted by" a properly considered document, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

"In general, three requirements must be satisfied before a district court may lawfully exercise personal jurisdiction over a party: (1) 'the plaintiff's service of process upon the defendant must have been procedurally proper'; (2) 'there must be a statutory basis for personal jurisdiction that renders such service of process effective'; and (3) 'the exercise of personal jurisdiction must comport with constitutional due process principles.'" *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 68-69 (2d Cir. 2022) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)). District courts deciding 12(b)(2) motions typically collapse those requirements into a two-part analysis. *See, e.g.*, *O'Reilly v. TP ICAP Glob. Mkts. Ams. LLC*, No. 24-cv-05913 (KPF), 2025 WL 2773284, at *6 (S.D.N.Y. Sept. 29, 2025) ("A district court deciding a motion to dismiss for lack of personal jurisdiction engages in a two-part analysis."); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (same). "First, the court must establish whether there is 'a statutory basis for exercising personal jurisdiction.'" *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 86 (S.D.N.Y. 2021) (alteration adopted) (italicization omitted) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)). "In making this determination, the court 'applies the forum state's personal jurisdiction rules' unless a federal statute 'specifically

provides for national service of process.'" *Corley v. Vance*, No. 15-cv-01800 (KPF), 2019 WL 3841939, at *4 (S.D.N.Y. Aug. 15, 2019) (alteration adopted) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). New York's long-arm statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . . ; or 3. commits a tortious act without the state causing injury to person or property within the state . . . , if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a).

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Chloe*, 616 F.3d at 164; *accord Murray Eng'g P.C. v. Remke*, No. 17-cv-06267 (KPF), 2018 WL 3773991, at *3 (S.D.N.Y. Aug. 9, 2018). "The due process analysis consists of two prongs: the minimum contacts inquiry and the reasonableness inquiry." *GE Renewables N. Am., LLC v. SFK USA Inc.*, No. 23-cv-09274 (PKC), 2025 WL 437890, at *4 (S.D.N.Y. Feb. 7, 2025). "[A]nalysis of minimum contacts requires 'evaluation of the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test.'" *Kumar v. Opera Sols. OPCO, LLC*, No. 20-cv-06824 (GHW), 2021 WL 4442832, at *10 (S.D.N.Y. Sept. 28, 2021) (alterations adopted) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)). "[O]nce minimum contacts are established, a court considers those contacts 'in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (quoting *Licci*, 732 F.3d at 170). If the Court concludes

that it has jurisdiction, it may then turn to the merits. *See Cavanaugh v. Northwell Health, Inc.*, No. 21-cv-01381 (EK) (ARL), 2025 WL 904314, at *5 (E.D.N.Y. Mar. 24, 2025) ("Having concluded that there is no jurisdictional impediment to doing so, the Court now proceeds to the merits.").

## II. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint needs to allege "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The Court will not, however, "accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). At bottom, a complaint must "contain[] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Iqbal*, 556 U.S. at 678).

# DISCUSSION

## I. Kass Shuler's Motion to Dismiss

Kass Shuler asks this Court, pursuant to Rules 12(b)(2) and 12(b)(6), to dismiss Plaintiff's Amended Complaint in its entirety for lack of personal jurisdiction and failure to state a claim. *See generally* Kass Br. "When a defendant moves to dismiss under Rules 12(b)(2) and 12(b)(6), the court must resolve the Rule 12(b)(2) motion first." *Suarez v. Cal. Nat. Living, Inc.*, No. 17-cv-09847 (VB), 2019 WL 1046662, at *3 (S.D.N.Y. Mar. 5, 2019); *accord Arrowsmith v.*

*United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). The Court therefore begins with the parties' Rule 12(b)(2) arguments.

Plaintiff invokes two bases for personal jurisdiction: New York's long-arm statute, N.Y. C.P.L.R. § 302(a), and 15 U.S.C. § 1692i. Opp. to Kass at 3-6. As discussed below, neither provision confers jurisdiction here. Because the Court concludes that it lacks personal jurisdiction over Kass Shuler, it need not, and does not, assess Kass Shuler's merits arguments, Kass Br. at 16-28. *See, e.g.*, *Ditkoff v. Wolff*, No. 24-cv-01955 (MKV), 2025 WL 919635, at *1 (S.D.N.Y. Mar. 26, 2025) ("Because the Court concludes that it lacks personal jurisdiction over [d]efendants, the Court does not reach the merits of [p]laintiff's claims."); *Century Sports, Inc. v. Ross Bicycles, LLC*, No. 19-cv-04842 (JS) (ARL), 2021 WL 1108639, at *6 (E.D.N.Y. Mar. 23, 2021) ("[G]iven that there is no personal jurisdiction over [d]efendants, the Court does not consider the parties' remaining arguments.").

**A. New York's Long-Arm Statute**

Plaintiff first argues that the Court has personal jurisdiction over Kass Shuler under New York's long-arm statute, N.Y. C.P.L.R. § 302(a), invoking both Section 302(a)(1) and Section 302(a)(3)(ii). Opp. to Kass at 3-5. Kass Shuler contends that the allegations in the Amended Complaint do not support a finding that either section brings Kass Shuler within the Court's jurisdictional reach. Kass Br. at 11-15; Kass Reply at 3-4. The Court agrees with Kass Shuler.

*1. CPLR § 302(a)(1)*

"To establish personal jurisdiction under [S]ection 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)); *accord Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *see also* N.Y. C.P.L.R.

§ 302(a)(1) (permitting exercise of jurisdiction over a nondomiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state"). "The overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.*, --- F.4th ---, 2026 WL 2035965, at *6 (2d Cir. July 15, 2026) (alteration adopted) (quoting *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007)). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Eades*, 799 F.3d at 168 (quoting *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007)). And "a claim 'arises from'" such activities "when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Sole Resort*, 450 F.3d at 103 (citation omitted) (alteration adopted) (first quoting *McGowan*, 419 N.E.2d at 323; and then quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)).

None of Kass Shuler's alleged New York contacts invoked the benefits or protections of New York's laws. The Amended Complaint does not allege that Kass Shuler maintained an office in New York, solicited New York business, supplied services in New York, or otherwise invoked the privileges or protections of New York law. *See, e.g.*, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 232 (S.D.N.Y. 2019) ("Having a business office in New York is an example of transacting business under the long-arm statute."); *DeLorenzo v. Ricketts & Assocs., Ltd.*, No. 15-cv-02506 (VSB), 2017 WL 4277177, at *8 (S.D.N.Y. Sept. 25, 2017) ("[I]f solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may be found to exist." (citation omitted)), *aff'd sub nom.*

*DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6 (2d Cir. 2018) (summary order); *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 167 (S.D.N.Y. 2010) ("[B]y purposefully creating a continuous relationship with a New York corporation and by maintaining constant communications with it over the period of approximately one year, [defendant] availed himself of the benefits and privileges of transacting business in New York[.]"); *Fischbarg*, 880 N.E.2d at 26 (finding that Section 302(a)(1) supported finding of personal jurisdiction given "defendants' purposeful attempt to establish an attorney-client relationship [in New York] and their direct participation in that relationship via calls, faxes and e-mails that they projected into [New York] over many months"). To the contrary, the Kass Shuler defendants are alleged to be a Florida-based law firm and two Florida-licensed attorneys, and the claims against them arise from their representation of U.S. Bank in a Florida foreclosure action, their communications concerning insurance proceeds associated with a Florida property, and their participation in Florida post-judgment and appellate proceedings. *See* Am. Compl. ¶¶ 10-13, 30, 33, 35, 42, 48, 67. The fact that Plaintiff, the Estate, and Plaintiff's counsel were located in New York when those events took place, *see id.* ¶ 10 ("Defendant Kass Shuler intentionally directed its own fraudulent and tortious conduct against a New York estate and its heirs residing in New York."); Opp. to Kass at 4 ("Kass [Shuler]'s . . . tortious conduct was directed toward a New York resident . . . through his New York attorney over funds due to a New York Estate." (emphasis omitted)), does not convert Kass Shuler's Florida representation into the transaction of business in New York. *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (noting that "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York" and collecting cases); *accord Marvel Characters*, 726 F.3d at 128; *see also Ehrenfeld*, 881 N.E.2d at 831, 835 (holding that Section 302(a)(1) does not "confer[] personal jurisdiction over a person . . . 'who

sued a New York resident in [another] jurisdiction . . . and . . . whose contacts with New York stemmed from the [underlying] lawsuit and whose success in the [underlying] suit resulted in acts that must be performed by the subject of the suit in New York'" because "his communications in [New York] were intended to further his assertion of rights under the laws of [the other jurisdiction]" (citation omitted)); *Fisher v. O'Brien*, No. 09-cv-00042 (CBA) (LB), 2010 WL 1269793, at *1, *5-6 (E.D.N.Y. Mar. 9, 2010) (rejecting personal jurisdiction under Section 302(a)(1) in case where plaintiff, a New York resident, sued law firm under the FDCPA because "[d]efendants represented [lienholder] in Ohio state court, the liens were perfected in Ohio and the [associated property] that w[as] the subject of plaintiff's and defendants' client's lawsuit w[as] in Ohio"), *report and recommendation adopted*, 2010 WL 1286365 (E.D.N.Y. Mar. 30, 2010).

In arguing to the contrary, Plaintiff relies principally on *Eades v. Kennedy, PC Law Offices*. Opp. to Kass at 3-4 (asserting that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted" (alteration in original) (quoting *Eades*, 799 F.3d at 168)). There, an out-of-state debt-collection law firm purposefully mailed a collection notice and a summons and complaint into New York and conducted a collection call with the New York debtor. *Eades*, 799 F.3d at 168. Those contacts were central components of the alleged FDCPA violations. *Id.* Here, by contrast, the alleged misconduct consists of positions taken in a Florida litigation, communications with Citizens concerning a Florida insurance claim, and receipt of a check at a Florida office. *See* Am. Compl. ¶¶ 10, 13, 30, 33, 35, 39, 42, 48, 67. Any communications with Plaintiff's New York counsel were responsive or ancillary to the Florida dispute, not purposeful New York transactions giving rise to Plaintiff's claims. *See Spetner v.*

*Palestine Inv. Bank*, 70 F.4th 632, 640 (2d Cir. 2023) ("Because the touchstone for jurisdiction under New York's long-arm statute is the intent to reach the forum, jurisdiction cannot be based on conduct in the forum that is extraneous or coincidental."); *see, e.g.*, *ProFoot, Inc. v. Niro L. Grp. LLC*, No. 17-cv-05405 (CBA) (JO), 2018 WL 11697402, at *2, *4 (E.D.N.Y. Sept. 17, 2018) (observing that defendant law firm's "act of providing notice to [plaintiff] in Brooklyn — because that is where [plaintiff] is domiciled — does not establish purposeful availment," where the at-issue underlying act occurred in New Jersey); *NY United A-1 Constr., Inc. v. J.P. Mgmt., LLC*, No. 22-cv-04583 (AKH), 2023 WL 2919090, at *2 (S.D.N.Y. Apr. 12, 2023) (concluding that Section 302(a)(1) "is not a basis of jurisdiction . . . because [d]efendants ha[d] no physical presence in New York, and their only contact with the forum were communications with, and payments to, a New York [r]esident [plaintiff]"); *Eisner v. Berland*, 258 N.Y.S.3d 482, 2026 WL 1393065, at *2 (N.Y. Sup. Ct. 2026) (unpublished table decision) (noting that personal jurisdiction pursuant to Section 302(a)(1) "cannot be based solely on communications with a New York resident when the substantive conduct occurred entirely outside the state"). Plaintiff has therefore failed to make a prima facie showing that Section 302(a)(1) provides a statutory basis for personal jurisdiction.

2. *CPLR § 302(a)(3)(ii)*

Section 302(a)(3)(ii) permits jurisdiction over a party who "commits a tortious act without the state causing injury to person or property within the state . . . , if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). To make a prima facie showing of jurisdiction under this section, a plaintiff must plead five elements:

> (1) The plaintiff stated a colorable claim that the defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should

> reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.

*Nat'l Union Fire Ins. Co. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 72 (2d Cir. 2023) (alterations adopted) (quoting *Sole Resort*, 450 F.3d at 106). Zayas has not plausibly alleged those requirements here. Setting aside the merits of Plaintiff's claim and viewing the facts in the light most favorable to him, Plaintiff, at a minimum, fails to plausibly allege the third, fourth, and fifth elements.

Beginning with the third element (location of injury), "[t]o determine whether a tortious act caused an injury in New York, courts apply the situs-of-injury test, which asks where the 'original event which caused the injury' occurred." *Miller Inv. Tr. v. Xiangchi Chen*, 967 F. Supp. 2d 686, 695 (S.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)); *accord Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001). The "original event is . . . generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Penguin Grp.*, 609 F.3d at 39-40 (internal quotation marks and citation omitted). It "occurs where the first effect of the tort that ultimately produced the final economic injury is located." *Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 337 (E.D.N.Y. 2013) (quoting *Penguin Grp.*, 609 F.3d at 40). "In other words, the situs of injury is where the critical events associated with the dispute occurred." *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 418 (S.D.N.Y. 2021) (quoting *Int'l Telecom, Inc. v. Generadora Electricia del Oriente, S.A.*, No. 00-cv-08695 (WHP), 2002 WL 1072230, at *2 (S.D.N.Y. May 28, 2002)); *CRT Invs., Ltd. v. BDO Seidman, LLP*, 925 N.Y.S.2d 439, 441 (N.Y. App. Div. 2011) ("In the context of a commercial tort, where the damage is solely economic, the situs of commercial injury is where

the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred.”).

The original events here occurred in Florida: the alleged assertion of an interest in proceeds tied to Florida property, the filing of opposition papers in a Florida court, the Florida appeal, Citizens’s delivery of the check to a Florida law office, and the alleged retention of that check at the Florida office. Am. Compl. ¶¶ 10-13, 30, 33, 35, 39, 42, 44, 48, 67. The situs of injury is therefore Florida. The Estate’s and its beneficiaries’ presence in New York, *see id.* ¶¶ 10, 89, does not relocate the injury to New York. “[T]he New York Court of Appeals has made clear that ‘the residence of the injured party in New York is not sufficient to satisfy the clear statutory requirement of an “injury within the state”’ for purposes of section 302(a)(3).” *Miller Inv. Tr.*, 967 F. Supp. 2d at 695 (quoting *McGowan*, 419 N.E.2d at 324). That is, “[w]hen the underlying events take place outside New York, the fact that there are financial consequences in New York due to the fortuitous location of plaintiffs is not a sufficient basis for jurisdiction under Section 302(a)(3).” *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 405 (S.D.N.Y. 2021) (citing *Whitaker*, 261 F.3d at 209); *accord Stemcor USA v. Hyundai Merch. Marine Co.*, 386 F. Supp. 2d 229, 234 (S.D.N.Y. 2005); *see, e.g.*, *Bonilla v. Nelson & Kennard*, No. 19-cv-05067 (DLI) (RER), 2020 WL 5763774, at *2-3 (E.D.N.Y. Sept. 28, 2020) (“[T]here is no personal jurisdiction [pursuant to Section 302(a)(3)(ii)] because [p]laintiff’s claims arise entirely from actions allegedly taken in California, and . . . the only connection to New York State that [p]laintiff alleges is her residence there.”); *Twine v. Levy*, 746 F. Supp. 1202, 1203, 1207 (E.D.N.Y. 1990) (finding no personal jurisdiction under Section 302(a)(3) in New York resident plaintiff’s legal malpractice suit regarding his representation during a Washington court appearance because “while plaintiff may have suffered damages in New York, his injury did not occur in New York”); *Mirman v. Feiner*, 900 F. Supp. 2d 305, 318-19 (E.D.N.Y. 2012)

("Although [plaintiff] may have eventually felt the effect of this event in the state, [defendant]'s retention of the stock occurred in Connecticut, and the bankruptcy proceedings occurred in Delaware[,]" making "[t]he situs of [plaintiff]'s first injury . . . either Connecticut or Delaware, but not New York."); *Fisher*, 2010 WL 1269793, at *7 ("Monetary damages alone are insufficient to establish injury within the state."). Plaintiff has accordingly failed to plead the third element.

Turning next to the fourth element (expected consequences), the Amended Complaint also fails to allege concrete facts showing that Kass Shuler should reasonably have anticipated its conduct would have consequences in New York. "The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quoting *Allen v. Auto Specialties Mfg. Co.*, 357 N.Y.S.2d 547, 550 (N.Y. App. Div. 1974)). Importantly, "[f]oreseeability must be coupled with evidence of a purposeful New York affiliation." *Berdeaux*, 561 F. Supp. 3d at 409 (quoting *Kernan*, 175 F.3d at 241); *accord Forties B LLC v. Am. W. Satellite, Inc.*, 725 F. Supp. 2d 428, 434 (S.D.N.Y. 2010). Kass Shuler's alleged knowledge that Plaintiff or the Estate was in New York is not a tangible manifestation of an intent to target the forum. *See Precision Wellness LLC v. Demetech Corp.*, No. 21-cv-01244 (JMA) (ARL), 2022 WL 970773, at *6 (E.D.N.Y. Mar. 30, 2022) ("[M]ere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the tort in that jurisdiction." (citation omitted)). And as discussed *supra* in Section I.A.1, Plaintiff does not otherwise plead any purposeful New York affiliation. Thus, Plaintiff has also failed to establish the fourth element.

Finally, as to the fifth element (substantial revenue), the Amended Complaint is devoid of any allegation that Kass Shuler derived substantial revenue from interstate or international commerce. *See generally* Am. Compl.; *see also* Kass Br. at 15. Nor does Plaintiff address this element in his briefing. *See generally* Opp. to Kass. Plaintiff has therefore failed to plead this fifth element as well.

Each of these omissions independently defeats jurisdiction under Section 302(a)(3)(ii). *See Trump v. Cantieri Di Baia*, No. 96-cv-09760 (RCC), 1999 WL 705431, at *2 (S.D.N.Y. Sept. 10, 1999) ("Plaintiffs' inability to show any one of the elements set forth in N.Y. C.P.L.R. § 302(a)(3)(ii) is fatal to the Court's jurisdiction."). Because New York law does not authorize jurisdiction, the Court need not reach the constitutional due-process inquiry as to either section of New York's long-arm statute. *See Kejriwal v. UCO Bank*, No. 12-cv-07507 (MHD), 2014 WL 116218, at *9 (S.D.N.Y. Jan. 10, 2014) ("Since there is no statutory basis for the exercise of personal jurisdiction under state law, we need not reach the issue of constitutional due process.").

**B. 15 U.S.C. § 1692i**

Plaintiff alternatively argues that 15 U.S.C. § 1692i authorizes suit in New York because Plaintiff resides here. Opp. to Kass at 5-6 ("Under 15 U.S.C. Section 1692i(a)(2) of the FDC[P]A, in the case of a consumer debt, the debt collector may sue only where the consumer resides." (emphasis omitted)).[2] That argument misreads the statute. Section 1692i is a venue restriction on a debt collector that "brings any legal action on a debt against any consumer." 15 U.S.C. § 1692i(a); *see Rivera v. NCB Mgmt. Servs., Inc.*, No. 23-cv-00221, 2023 WL 7553051, at *6 (D. Conn. Nov. 14, 2023) ("Section 1692i is the venue provision of the FDCPA, and § 1692i(a)(2) merely explains the venue requirements for any suit brought by a debt collector

[2] For clarification, 15 U.S.C. § 1692i is Section 811 of the FDCPA.

against a consumer for collection actions that do not involve interests in real property."). It generally requires that such an action be brought where the "consumer signed the contract," where the "consumer resides," or, for an action enforcing an interest in real property, where the "property is located." 15 U.S.C. § 1692i(a)(1)-(2). It does not prescribe where a *consumer* may sue a debt collector, confer personal jurisdiction over a defendant, or authorize nationwide service of process. *See Saks v. Andreu, Palma, Lavin, & Solis, PLLC*, No. 24-cv-02045 (OEM) (CLP), 2025 WL 317516, at *2 (E.D.N.Y. Jan. 28, 2025) ("[T]he FDCPA does not provide for national service of process[.]").

Accordingly, an FDCPA plaintiff must still establish personal jurisdiction under the ordinary rules, including the forum state's long-arm statute. *See Shorts v. Cedars Bus. Servs., LLC*, 767 F. Supp. 3d 96, 104-05 (S.D.N.Y. 2025). Plaintiff's hypothetical assertion that Defendants would have been required to sue the Estate in New York does not establish jurisdiction in this action. Section 1692i therefore provides no independent jurisdictional basis for Plaintiff's claims against Kass Shuler.

* * *

In sum, Plaintiff has failed to make a prima facie showing of personal jurisdiction as to Kass Shuler. Kass Shuler's motion to dismiss is therefore granted.

## II. U.S. Bank's Motion to Dismiss

Turning to U.S. Bank's motion to dismiss, U.S. Bank does not contest personal jurisdiction. Instead, it argues that each of the three claims against it fails as a matter of law. The Court agrees and addresses each claim in turn.[3]

---

[3] Because the parties identify no material conflict between New York and Florida law on the dispositive elements of the two state-law claims, the Court need not select between them. *See Rothstein v. Auto Club S.*, No. 15-cv-09391 (LAK) (SDA), 2019 WL 5722215, at *5 n.9 (S.D.N.Y. Aug. 26, 2019) ("The Court need not choose between the Florida and New York law,

### A. FDCPA

The FDCPA regulates conduct by a "debt collector" in connection with a "debt." 15 U.S.C. §§ 1692a(5)-(6), 1692c. Plaintiff's FDCPA claim fails as a matter of law because the Amended Complaint does not plausibly allege that U.S. Bank is a debt collector.

The FDCPA principally governs the conduct of debt collectors, which the statute defines as persons whose principal business purpose is debt collection or who regularly collect debts owed to another. *See* 15 U.S.C. § 1692a(6) (defining "debt collector" as a person who, among other requirements, is engaged in any "business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due . . . [to] another"); *Limpert v. Cambridge Credit Counseling Corp.*, 328 F. Supp. 2d 360, 362 (E.D.N.Y. 2004) ("The FDCPA defines a debt collector as any person who collects debts owed to another."), *amended on reconsideration in part*, 2004 WL 3395347 (E.D.N.Y. Sept. 16, 2004). Creditors, however, stand on a different footing. A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," except to the extent the person "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Creditors collecting an obligation for their own account and in their own name generally are not subject to the FDCPA. *See, e.g.*, *Springer v. U.S. Bank Nat'l Ass'n*, No. 15-cv-01107 (JGK), 2015 WL 9462083, at *11 (S.D.N.Y. Dec. 23, 2015) ("Because U.S. Bank was acting as a creditor, collecting its own debt, it is not a debt collector under the FDCPA."); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83

---

however, since there are no material differences in the Florida and New York law[.]"), *aff'd*, 831 F. App'x 589 (2d Cir. 2020) (summary order); *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, however, a New York court will dispense with choice of law analysis[.]").

(2017) ("[Defendant] may indeed collect debts for its own account without triggering the statutory definition [of 'debt collector'][.]"); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("As a general matter, creditors are not subject to the FDCPA."); *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (acknowledging "the general rule that creditors are not subject to the FDCPA"); *Tardi-Osterhoudt v. McCabe, Weisberg & Conway LLC*, No. 18-cv-00840, 2019 WL 4242410, at *4 (N.D.N.Y. Sept. 6, 2019) ("Plaintiff's [FDCPA] claim fails because, as a matter of law, she cannot establish that Deutsche Bank, as trustee, is collecting a debt owed another."); *Sorenson v. MBI, Inc.,* No. 16-cv-02029, 2019 WL 3231762, at *3 (D. Conn. July 18, 2019) ("The FDCPA distinguishes between creditors and debt collectors.").

The Amended Complaint describes U.S. Bank as the mortgagee and the entity that asserted its own claimed interest in the insurance proceeds. *See* Am. Compl. ¶¶ 1, 9, 31, 51, 55. It does not allege that the principal purpose of U.S. Bank's business is debt collection, or that U.S. Bank was collecting a debt owed to another. To the contrary, it alleges that U.S. Bank used its status as a current or former creditor to seek money for itself. Whether the claimed entitlement was valid, extinguished, or even fabricated does not transform a creditor asserting its own alleged right into a third-party debt collector. *Cf. In re Adler*, 395 B.R. 827, 834 n.5 (E.D.N.Y. 2008) ("The fact that [d]ebtor might dispute the existence or amount of plaintiffs' claim does not impact plaintiffs' status as creditors.").[4]

Plaintiff's cited exceptions, Opp. to Bank at 2-3, do not apply. *Vincent v. The Money Store* concerned the statutory false-name exception, under which a creditor may be treated as a

[4] The Form 1099-C allegation, Am. Compl. ¶¶ 57-58, does not cure this issue. Reporting cancellation of debt, even if erroneous, is not itself an attempt to collect payment, and the Amended Complaint does not identify any collection demand associated with that form.

debt collector if it uses another name in a manner suggesting that a third party is collecting the creditor's debt. *See Vincent*, 736 F.3d at 97-98; *see also* 15 U.S.C. § 1692a(6) (qualifying that "the term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts"). Plaintiff does not allege that U.S. Bank used a false name or otherwise indicated that a third party would be collecting the insurance proceeds.

*Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019) is likewise inapt — as Plaintiff himself seems to acknowledge. *See* Opp. to Bank at 3 ("[T]he Court also reasoned that a creditor is not a debt collector for the purposes of the Act (with the exceptions found in Section 1692f(6)), if it is engaged in nothing more than the enforcement of a security interest."). In *Obduskey*, the Supreme Court concluded that a law firm representing a mortgage loan servicer as part of nonjudicial foreclosure proceedings was *not* a debt collector and could only be liable under the FDCPA for a violation of 15 U.S.C. § 1692f(6), *see Obduskey*, 586 U.S. at 471-72, 474, which Plaintiff does not invoke here.

Indeed, it appears that Plaintiff cites these cases not because they are applicable, but for the broader proposition that exceptions to the general rule that creditors are not subject to the FDCPA exist. *See* Opp. to Bank at 2 ("While it is true that generally a bona fide creditor is not considered a debt collector for the purposes of the FDCPA, there are exceptions."). Fair enough. But that observation has no bearing on this case because, as noted, Plaintiff has not identified any applicable exception. The FDCPA claim is therefore dismissed.

### B. Tortious Interference with Contract

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's

breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 401 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)). Florida law similarly requires intentional and unjustified interference that induces or causes the third party to breach, with resulting damage. *Attea v. Univ. of Miami (Miller Sch. of Med.)*, No. 12-23933-CIV-KING, 2013 WL 12210419, at *2 (S.D. Fla. Feb. 5, 2013) ("The elements of a cause of action for tortious interference with a contractual relationship are: (1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, (5) Damages resulting from the breach." (quoting *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. Dist. Ct. App. 1985)). The Court need not address all five elements, as the Amended Complaint plainly fails to plausibly plead actual breach.

The Amended Complaint alleges in conclusory terms that Citizens "failed to pay" because of Defendants and that a "breach" resulted. Am. Compl. ¶¶ 63-65. But it does not identify any provision of the insurance policy that Citizens breached or any date on which Citizens was contractually required to pay the Estate. The pleaded facts instead show that Citizens issued a check in 2013, reissued a jointly payable check during the post-judgment dispute, and ultimately paid the proceeds to the Estate. *Id.* ¶¶ 19, 39, 46. Those allegations may describe delay and a dispute over proper payees; they do not, without more, plausibly allege breach of the insurance contract. *See Leadsinger, Inc. v. Cole*, No. 05-cv-05606 (HBP), 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (finding that plaintiff's failure to allege the relevant terms of the allegedly breached contract warranted dismissal of the tortious interference with contract claim and collecting cases); *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005) ("In order to state a claim, the plaintiff is required to identify a specific contractual term

that was breached." (internal quotation marks and citation omitted)); *cf. S.B. v. Tenet Healthcare Corp.*, 732 F. App'x 721, 725 (11th Cir. 2018) (per curiam) (unpublished opinion) (holding that "[t]he district court correctly dismissed [plaintiff]'s claim[] for breach of contract . . . [because] [plaintiff] failed to allege a contractual provision that [defendant] breached"); *Gentry v. Harborage Cottages-Stuart, LLLP*, No. 08-14020-CIV, 2008 WL 1803637, at *3 (S.D. Fla. Apr. 21, 2008) (dismissing breach of contract claim because "allegations fail[ed] to provide sufficient reference to a specific term of the [contracts] that was breached").

"Having failed sufficiently to allege actual breach, it follows that the plaintiff[] ha[s] not alleged facts sufficient to fulfill [the] third element, procurement of the third-party's breach of the contract without justification." *Kirch*, 449 F.3d at 402 n.6. Plaintiff alleges "[u]pon information and belief" that "Defendants had false, misleading and corrupt *ex parte* communications with" a Citizens examiner, Am. Compl. ¶ 43, but supplies no supporting facts regarding when any such communication occurred, what was said, or how it caused Citizens to violate a contractual obligation. A bare assertion that Defendants "caused" Citizens "not to pay," *id.* ¶ 63, is a legal conclusion that the Court need not, and does not, accept as true. *See, e.g.*, *Taboola, Inc. v. Ezoic Inc.*, No. 17-cv-09909 (PAE) (KNF), 2020 WL 1900496, at *9 (S.D.N.Y. Apr. 17, 2020) (dismissing tortious interference with contract counterclaim because defendant's "unadorned allegation that [third-party] 'breached' the contract, without any factual support, is a bare legal conclusion that cannot make a claim of breach plausible"). The Court accordingly dismisses the tortious interference with contract claim.

### C. Abuse of Process

Under New York law, "[a]buse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Madison Stock*

*Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 482 (E.D.N.Y. 2019) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). "[T]he 'gist of the action for abuse of process' is 'the improper use of process *after it is issued* . . . . A malicious motive alone . . . does not give rise to a cause of action for abuse of process.'" *Campos v. City of New York*, No. 10-cv-00493 (JSR), 2010 WL 3912493, at *4 (S.D.N.Y. Sept. 13, 2010) (omissions in original) (quoting *Curiano*, 469 N.E.2d at 1326). Florida law likewise requires a perverted use of process for an ulterior purpose, not merely bad motive in employing process for its intended function. *See Steinmetz v. Pickholtz*, 414 So. 3d 309, 315 (Fla. Dist. Ct. App. 2025) (noting that "[t]he elements of abuse of process are (1) an illegal, improper, or perverted use of process; (2) an ulterior motive; and (3) damages" and that the tort's focus is "the improper use of process *after* it issues" (quoting *Marty v. Gresh*, 501 So. 2d 87, 89 (Fla. Dist. Ct. App. 1987))).

Plaintiff's abuse-of-process claim is based on U.S. Bank's opposition to the Estate's motion to compel and its appeal from the resulting order. *See* Am. Compl. ¶¶ 67-72. As a threshold matter, "appeals [and] objections . . . do not qualify as legal process because these mechanisms do not require [p]laintiffs to 'perform or refrain from the doing of some prescribed act.'" *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514-15 (2d Cir. 2020) (summary order) (quoting *Julian J. Studley, Inc. v. Lefrak*, 362 N.E.2d 611, 613 (N.Y. 1977)); *accord JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 279 (S.D.N.Y. 2024); *Bottone v. Roche*, No. 22-cv-10349 (MKV), 2024 WL 869552, at *5 (S.D.N.Y. Feb. 28, 2024); *see also Orellana v. Macy's Retail Holdings, Inc.*, No. 17-cv-05192 (NRB), 2018 WL 3368716, at *16 (S.D.N.Y. July 10, 2018) ("In the context of an abuse of process claim, courts define the necessary legal process as a direction or demand that the person to whom it is directed perform or refrain from the doing of some prescribed act." (alteration adopted) (internal quotation marks and citation omitted)).

That fundamental defect aside, Plaintiff also fails to allege any perverted use of process. The Amended Complaint asserts that U.S. Bank opposed Plaintiff's motion to compel by arguing that the Florida trial court lacked jurisdiction and then appealed the adverse ruling on that same ground. Am. Compl. ¶¶ 6, 33, 35, 69, 72. Those filings sought judicial determinations concerning the court's authority — the ordinary and intended purpose of motion practice and the appellate process. Indeed, the Florida appellate court ultimately accepted U.S. Bank's jurisdictional position, *id.* ¶ 38, and Plaintiff himself concedes that "Defendants . . . arguably had the right to file their notice of appeal and their appellate briefs," *id.* ¶ 71. Even accepting Plaintiff's allegation that U.S. Bank acted to delay payment or increase the Estate's expenses, *see id.* ¶ 35, "[i]mproper motive alone is insufficient for a claim of abuse of process," *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-cv-01260 (KAM), 2009 WL 4547792, at *7 (E.D.N.Y. Dec. 1, 2009); *accord Muro-Light v. Farley*, 944 N.Y.S.2d 571, 573 (N.Y. App. Div. 2012); *see also Spitalny v. Insurers Unlimited, Inc.*, No. 05-CV-12-FTM-29SPC, 2005 WL 1528629, at *2 (M.D. Fla. June 24, 2005) ("In order to sustain an action for abuse of process two elements are essential, (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." (quoting *McMurray v. U-Haul Co., Inc.*, 425 So. 2d 1208, 1209 n.1 (Fla. Dist. Ct. App. 1983))); *see, e.g.*, *Curiano*, 469 N.E.2d at 1326 ("[Plaintiffs] do not contend that the summons issued by defendants was improperly used after it was issued but only that defendants acted maliciously in bringing the action. A malicious motive alone, however, does not give rise to a cause of action for abuse of process."). Plaintiff's abuse of process claim is thus dismissed.

## III. Leave to Amend

Plaintiff requests leave to amend in both of his opposition briefs. Opp. to Kass at 11; Opp. to Bank at 6. Because the Court is dismissing the Amended Complaint solely for lack of

personal jurisdiction with respect to Kass Shuler, that dismissal is necessarily without prejudice. *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 (2d Cir. 2022) ("A dismissal for lack of jurisdiction must be without prejudice rather than with prejudice." (quoting *Donnelly v. CARRP*, 37 F.4th 44, 57 (2d Cir. 2022))).

The same cannot be said of the Court's dismissal of the Amended Complaint as to U.S. Bank. "Dismissals for failure to state a claim . . . are generally with prejudice." *Id.* (quoting *Donnelly*, 37 F.4th at 57). And while Rule 15 provides that "court[s] should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), denial of leave is appropriate where amendment would be futile, *see Veras v. N.Y.C. Dep't of Educ.*, No. 22-cv-00056 (JLR) (SN), 2024 WL 3446498, at *8 (S.D.N.Y. July 17, 2024) ("Nonetheless, 'it is within the sound discretion of the district court to grant or deny leave to amend,' and 'a district court may properly deny leave when amendment would be futile.'" (citation omitted) (first quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); and then quoting *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999))), *aff'd*, No. 24-1956-cv, 2025 WL 2824851 (2d Cir. Feb. 6, 2025) (summary order), *cert. denied*, 146 S. Ct. 142 (2025).

Such is the case here. Amendment is futile when the amended claim "could not withstand a motion to dismiss." *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (citation omitted). Plaintiff identifies no additional facts that suggest that U.S. Bank was collecting another's debt, that Citizens breached an identified contractual obligation, or that U.S. Bank used process for a collateral purpose after issuance. The Court thus finds that amendment would not cure the defects in Plaintiff's claims against U.S. Bank.

Relatedly, "denial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured.'" *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190

(2d Cir. 2015)). Plaintiff here offers a generalized request for another opportunity to plead. *See* Opp. to Bank at 6 ("In the event that the Court is inclined to find any pleading deficiency, Plaintiff respectfully requests that the Court allow Plaintiff leave to remedy the pleading as it would be the first time that Plaintiff would be amending for substantive reasons."). That is not enough.

Accordingly, leave to amend the Amended Complaint with respect to U.S. Bank is denied.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss. The Clerk of the Court is respectfully directed to terminate the motions at Dkts. 17 and 28 and CLOSE this case.

Dated: August 10, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge